IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| Shannon Coulbourn Presnell,<br><br>     Plaintiff,<br><br> v.<br><br>Sharp Electronics Corporation,<br><br>     Defendant. | **COMPLAINT**<br>**(Jury Trial Demanded)**<br>Case No.: 5:21-cv-107 |

COMES NOW Plaintiff, Shannon Coulbourn Presnell, by and through counsel, who does allege and say of the Defendant Sharp Electronics Corporation, as follows:

## PARTIES

1. Plaintiff Shannon Coulbourn Presnell (hereinafter "Presnell") is an individual and resident of Alexander County, North Carolina and was employed by the Defendant in the State of North Carolina.

2. Defendant Sharp Electronics Corporation (hereinafter "Sharp Electronics") is a New Jersey corporation with its headquarters in Montvale, New Jersey.

3. Sharp Electronics maintains branches in seven cities in North Carolina and conducts business throughout the State.

## JURISDICTION AND VENUE

4. This Court has personal jurisdiction over the Defendant by virtue of the Defendant's maintenance of multiple offices within this State, and by virtue of

the incidents giving rise to this complaint having occurred within this State.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

6. Pursuant to 42 U.S.C. § 2000e-5(f)(3), the United States District Court for the Western District of North Carolina is the sole appropriate and proper forum for this action, as the Plaintiff was employed by the Defendant within that District.

## FACTS ALLEGED

7. Presnell began her employment with Kearns Business Solutions in 2004 and worked in the position of Major Account executive and Office Sales Manager for Hickory & Asheville until 2008.

8. In or around 2008, Sharp Electronic acquired Kearns Business Solutions and retained Presnell in the position of Sales Manager for the Hickory office.

9. In 2016, Presnell began transition from the position of Office Sales Manager for the Hickory office to General Sales Manager (hereinafter a "GSM") for North Carolina.

10. At all times relevant to this Complaint, Presnell was the only female GSM.

11. At all times relevant to this Complaint, Presnell was the only female working in a position with duties and responsibilities comparable to that of a GSM.

12. During the transition from Office Sales Manager to GSM, Presnell performed the duties of both positions.

13. During the aforementioned transitional period, Presnell shared her

GSM duties with Jerry Shumate.

14. Office Sales Managers and GSMs are both entitled to compensation which includes a base salary and additional compensation based on commission for sales.

15. Presnell was not paid both commissions and instead received the greater of 50% of the GSM commission or 100% of the Hickory Sales Commission.

16. Conversely, Brett Sponseller, a male employee of Sharp, was allowed to collect both commissions when he similarly worked as both an Office Sales Manager and as a GSM.

17. After completing her transition to GSM, Presnell retained her position of GSM until her termination in May of 2020.

18. Until her termination in May of 2020, Presnell worked throughout locations in North Carolina and her primary place of work was in Charlotte, North Carolina.

19. Prior to her termination, Presnell was a well-known GSM and respected throughout the Sharp Electronics corporate structure.

20. Prior to her termination, Presnell was often called to serve on committees and help grow "enterprise account programs", an aspect of Sharp Electronics' business that Presnell excelled in.

21. In May of 2019, Sharp Electronics changed the compensation plan for all GSMs and removed the ability of GSMs to earn monthly bonuses. These monthly bonuses were replaced with a system providing a "fiscal half" bonus approximately

every six months.

22. The bonus portion of the GSM pay made up a significant portion of Presnell's monthly take-home pay.

23. Presnell, and other GSMs, expressed their dissatisfaction with the change in compensation structure.

24. Responding to the displeasure and other GSMs, Sharp Electronics agreed to revisit the changes to the bonus structure in September of 2019, the end of the fiscal half-year.

25. In August of 2019, Presnell learned, through messages with a Sharp Electronics employee, that Brett Sponseller, the GSM for South Carolina, had been granted an amended bonus structure whereby he received additional monthly compensation and was otherwise exempted from the pay structure that Presnell was subjected to.

26. In response, Presnell approached her supervisor, who agreed to assist in attempting to procure a similar exception for Presnell.

27. Throughout August and September of 2019, Presnell attempted to receive treatment equal to that of Brett Sponseller.

28. Sharp Electronics denied granting Presnell a similar exception to the one Brett Sponseller received.

29. In January of 2020, Sharp Electronics provided Presnell a bonus to compensate for some lost pay potential under the new compensation scheme.

30. On information and belief, Sharp Electronics provided all other GSMs a

bonus on similar terms for a similar purpose.

31. The same month, Presnell learned that Brett Sponseller, thanks to his exemption and alternative monthly compensation, had been paid over $120,000.00 more than Presnell.

32. This difference in pay cannot be attributed to any difference in performance.

33. This difference in pay cannot be attributed to difference in geographic location.

34. This difference in pay cannot be attributed to difference in duties or responsibilities.

35. In January of 2020, and continuing through March of 2020, Presnell began to internally lodge complaints regarding the unequal pay between herself and Brett Sponseller.

36. Through this process, Presnell raised her complaints of unequal pay with multiple officers and executives of Sharp Electronics.

37. In May of 2020 Presnell sent an email to the Director of HR for Sharp Electronics alleging that the difference in pay was the result of Presnell being treated differently on account of her sex, that she was concerned about retaliation for raising such issues, and seeking help resolving the issues.

38. On May 19, 2020, Presnell was informed she was being terminated for unspecified misconduct revealed in an internal audit.

39. Presnell subsequently learned that the grounds for such termination

was that she had used the Sharp Electronics Corporate American Express (hereinafter the "Sharp AMEX") for personal charges.

40. Employees of Sharp Electronics, included Presnell, were not allowed to seek reimbursement for them through Sharp Electronics. Despite this policy, personal expenses were frequently incurred on Sharp AMEX cards by various employees of Sharp Electronics.

41. Any non-corporate expenses on the card were the responsibility of the cardholder.

42. Presnell never sought reimbursement for any of the personal expenses incurred on her Sharp AMEX.

43. Other male employees of Sharp Electronics, including executives directly responsible for Presnell's compensation, frequently used their Sharp AMEX cards for personal expenses.

44. Other male employees of Sharp Electronics, including executives directly responsible for Presnell's compensation, frequently sought reimbursement for personal expenses.

45. Such male employees of Sharp Electronics were not fired for their use of the Sharp AMEX card for personal expenses.

46. On information and belief, such male employees were not even seriously disciplined for their use of the Sharp AMEX card for personal expenses.

47. At the time of her termination, Presnell had not received a response to her email to the Director of HR for Sharp Electronics.

48. At the time of her termination, Presnell raised the issue of whether her termination was as a result of her complaints and Sharp Electronics responded that the unequal pay was a "separate issue" that would be dealt with soon.

49. On May 22, 2020, Presnell participated in a phone call regarding the circumstances of her termination. Presnell raised issues of why she was not being provided a severance package, as other people had received, and why she would not be compensated for large deals she had completed prior to her termination.

50. Sharp Electronics denied Presnell's request for a severance package and tabled the issue of compensation for a later date.

51. Sharp Electronics previously provided male employees that were terminated with a severance package.

52. The Director for HR at Sharp Electronics attended the May 22, 2020, hearing but indicated that she had still not addressed Presnell's internal complaint.

53. In June of 2020 Sharp Electronics informed Presnell that she would not be receiving any bonus compensation for the last fiscal half year she had worked.

54. Sharp Electronics never addressed Presnell's internal complaint of unequal pay.

55. Plaintiff timely filed a complaint with the Equal Employment Opportunity Commission (hereinafter the "EEOC") alleging termination on the basis of sex, retaliatory termination, and violation of the Equal Pay Act of 1963 on or about August 13, 2020.

56. On May 14, 2021 the EEOC issued a notice of right to sue to Plaintiff.

## FIRST CAUSE OF ACTION
### (Violation of the Equal Pay Act 29 U.S.C. § 207(d))

57. Plaintiff hereby incorporates by reference the proceeding paragraphs as if fully stated herein.

58. At all times relevant to this Complaint, Plaintiff was a female employee of Defendant.

59. Plaintiff occupied the position of General Sales Manager.

60. Plaintiff's position as General Sales Manager entailed duties and responsibilities which required equal skill, effort, and responsibility, and which were performed under similar working conditions, as other General Sales Managers.

61. Plaintiff was paid less than at least one male General Sales Manager, Brett Sponseller.

62. Plaintiff was paid less on the basis of her sex.

63. Plaintiff was not paid less as a result of any seniority system, merit, system, system which measures earnings by quantity or quality of production, or any other differential based on any factor other than sex.

64. Defendant's actions were in violation of 29 U.S.C. § 207(d).

65. Defendant's actions in violation of 29 U.S.C. § 207(d) were willful and malicious.

## SECOND CAUSE OF ACTION
### (Wrongful Discharge on the Basis of Sex in Violation of 42 U.S.C. § 2000e-2)

66. Plaintiff hereby incorporates by reference the proceeding paragraphs as if set out in their entirety herein.

67. Defendant employed Plaintiff in an at-will capacity until her termination on or about May 19, 2020.

68. Plaintiff was terminated due to her sex and not for the pretextual reasons provided by Defendant.

69. Defendant's termination of Plaintiff was and is in violation of 42 U.S.C. § 2000 e through 42 U.S.C. § 2000e-3.

70. Plaintiff was damaged by Defendant's actions in an amount exceeding $25,000.00, to be proven with more specificity at trial. This amount includes lost wages and compensatory damages related to the Defendant's wrongful discharge of Plaintiff.

71. The Defendant's actions as alleged in this Complaint were willful and wanton, were in reckless disregard of the Plaintiff's rights, and the Plaintiff is entitled to recover punitive damages against the Defendant pursuant to N.C. Gen. Stat. § 1D-15.

## THIRD CAUSE OF ACTION
### (Wrongful Discharge on the Basis of Sex in Violation of 42 U.S.C. § 2000e-2)

72. Plaintiff hereby incorporates by reference the proceeding paragraphs as if set out in their entirety herein.

73. Defendant employed Plaintiff in an at-will capacity until her termination on or about May 19, 2020.

74. Plaintiff was terminated in retaliation for her complaints about unequal pay and unequal treatment on the basis of sex.

75. Defendant's termination of Plaintiff was and is in violation of 42 U.S.C.

§ 2000 e through 42 U.S.C. § 2000e-3.

76. Plaintiff was damaged by Defendant's actions in an amount exceeding $25,000.00, to be proven with more specificity at trial. This amount includes lost wages and compensatory damages related to the Defendant's wrongful discharge of Plaintiff.

77. The Defendant's actions as alleged in this Complaint were willful and wanton, were in reckless disregard of the Plaintiff's rights, and the Plaintiff is entitled to recover punitive damages against the Defendant pursuant to N.C. Gen. Stat. § 1D-15.

WHEREFORE, Defendants pray this Court for the following relief:

1. That the Defendant be ordered to pay all costs of this action.

2. That the Defendants be ordered to pay Plaintiffs an amount greater than $25,000.00 for the allegations as stated herein.

3. That punitive damages be recovered from the Defendants.

4. That all claims in this manner so triable be tried by a Jury.

5. That an award of attorneys' fees be made in favor of Plaintiff.

6. For such relief as this Court deems just and proper.

This is the 16th day of July, 2021.

                                                **Pope McMillan, P.A.**
                                                Attorneys for the Plaintiff

                                        By:    /s/ Clark D. Tew
                                                    Clark D. Tew

N.C. State Bar No. 41632<br>
P.O. Drawer 1776<br>
Statesville, NC 28687<br>
(704) 873-2131<br>
ctew@popemcmillan.com